# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## *for the*

# 𝔉𝔬𝔲𝔯𝔱𝔥 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

— v. —

CARLOS BARIOLA, a/k/a C-Lo, STEPHEN WAYNE PURKS, a/k/a City, and NATASSIA NICOLE KIMBLE, a/k/a Prima,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA AT HARRISONBURG

## BRIEF OF APPELLANTS

GERALD T. ZERKIN
ATTORNEY AT LAW
P.O. Box 5665
Richmond, VA 23220
(804) 921-4885
zerkingt@msn.com

AARON L. COOK
COOK ATTORNEYS, PC
71 Court Square, Suite B
Harrisonburg, VA 22801
(540) 564-9699
cook@cookattorneys.com

LAWRENCE H. WOODWARD, JR.,
RULOFF, SWAIN, HADDAD,
MORECOCK, TALBERT &
WOODWARD, P.C.
317 30th Street
Virginia Beach, VA 23451
(757) 671-6047
lwoodward@srgslaw.com

*Attorney for
Defendant-Appellant
Natassia Nicole Kimble,
a/k/a Prima*

*Attorney for
Defendant-Appellant
Stephen Wayne Purks,
a/k/a City*

*Attorney for
Defendant-Appellant
Carlos Bariola, a/k/a C-Lo*

 COUNSEL PRESS    (800) 4-APPEAL • (810280)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT ............................................................1

STATEMENT OF APPELLATE JURISDICTION .................................1

STATEMENT OF ISSUES ..................................................................2

STATEMENT OF THE CASE.............................................................2

    A.    Procedural History..............................................................2

    B.    Factual Background.............................................................3

SUMMARY OF ARGUMENT .............................................................4

ARGUMENT .....................................................................................6

    ISSUE I

    THE EVIDENCE WAS INSUFFICIENT TO PROVE BEYOND A
    REASONABLE DOUBT THAT THE APPELLANT, CARLOS
    BARIOLA, WAS GUILTY OF COUNT I, CONSPIRACY TO
    DISTRIBUTE AND TO POSSESS WITH INTENT TO
    DISTRIBUTE METHAMPHETAMINE .................................................6

        Standard of Review ............................................................6

        Statement of Facts .............................................................7

        Argument...........................................................................7

    ISSUE II

    THE DISTRICT COURT ERRED WHEN IT DENIED
    APPELLANT PURKS' MOTION FOR JUDGMENT OF
    ACQUITTAL ON GROUNDS OF IMPROPER VENUE ..........................10

        Standard of Review ..........................................................10

        Statement of Facts ...........................................................11

        Argument.........................................................................12

The district court erred when it denied Appellant Purks's Rule 29 Motion for Judgment of Acquittal on grounds of improper venue .......................................................12

ISSUE III

THE DISTRICT COURT ERRED WHEN IT REFUSED TO SUPPRESS STATEMENTS MADE BY APPELLANT PURKS WHERE THE STATEMENTS WERE NOT VOLUNTARY AND MADE WHILE IN CUSTODY ...................................................16

    Standard of Review .......................................................16

    Argument ......................................................................19

        Any statements made were not voluntary................................19

        The Defendant invoked his right to counsel ............................20

ISSUE IV

THE EVIDENCE WAS INSUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT NATASSIA KIMBLE WAS GUILTY OF COUNT I, CONSPIRACY TO DISTRIBUTE AND TO POSSESS WITH INTENT TO DISTRIBUTE METHAMPHETAMINE .......................................................22

    Standard of Review ......................................................22

    Statement of Facts .......................................................22

    Argument ......................................................................25

CONCLUSION ...................................................................26

STATEMENT REGARDING ORAL ARGUMENT ............................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Berkemer v. McCarty*,
468 U.S. 420, 104 S. Ct. 3138, 82 L.Ed.2d 317 (1984) ......................................21

*California v. Beheler*,
463 U.S. 1121, 103 S. Ct. 3517, 77 L.Ed.2d 1275 (1983) .................................21

*Colorado v. Connelly*,
479 U.S. 157 (1986) ...................................................................................... 20, 22

*Davis v. United States*,
512 U.S. 452 (1994) ...........................................................................................21

*Edwards v. Arizona*,
451 U.S. 4771 (1983) .........................................................................................21

*Hutto v. Ross*,
429 U.S. 28 (1976) .............................................................................................19

*Miranda v. Arizona*,
384 U.S. 436 (1966) ...........................................................................................20

*Schneckloth v. Bustamonte*,
412 U.S. 218 (1973) ...........................................................................................20

*Smith v. Massachusetts*,
543 U.S. 462 (2005) ..................................................................................... 10, 11

*Travis v. United States*,
364 U.S. 631 (1961) ...........................................................................................13

*United States v. Alerre*,
430 F.3d 681 (4th Cir. 2005) ...............................................................................6

*United States v. Arce*,
49 F.4th 382 (4th Cir. 2022) ..............................................................................16

*United States v. Ayesh*,
702 F.3d 162 (4th Cir. 2012) ........................................................................ 19, 20

*United States v. Beidler*,
110 F.3d 1064 (4th Cir. 1997) ..............................................................................6

*United States v. Bowens*,
    224 F.3d 302 (4th Cir. 2000) ........................................................ 13, 14

*United States v. Braxton*,
    112 F.3d 777 (4th Cir. 1997) .............................................................20

*United States v. Cabrales*,
    524 U.S. 1 (1998) ....................................................................... 13, 14

*United States v. Clines*,
    958 F.2d 578 (4th Cir. 1992) .............................................................13

*United States v. Collins*,
    372 F.3d 629 (4th Cir. 2004) .............................................................12

*United States v. Cristobal*,
    293 F.3d 134 (4th Cir. 2002) .............................................................20

*United States v. Engle*,
    676 F.3d 405 (4th Cir. 2012) ........................................................ 12, 13

*United States v. Habegger*,
    370 F.3d 441 (4th Cir. 2004) .............................................................6

*United States v. Hargrove*,
    625 F.3d 170 (4th Cir. 2010) .............................................................21

*United States v. Hinderman*,
    625 F.2d 994 (10th Cir. 1980) ...........................................................12

*United States v. Lewis*,
    335 F.Supp.2d 812 (E.D.Mich. 2005) .................................................22

*United States v. Medina-Ramos*,
    834 F.2d 874 (10th Cir. 1987) ...........................................................16

*United States v. Oceanpro Indus., Ltd.*,
    674 F.3d 323 (4th Cir. 2012) .............................................................14

*United States v. Orrico*,
    599 F.2d 113 (6th Cir. 1979) .............................................................6

*United States v. Parker*,
    262 F.3d 415 (4th Cir. 2001) .............................................................21

*United States v. Pelton*,
    835 F.2d 1067 (4th Cir. 1987) ...........................................................20

*United States v. Perkins*,
    470 F.3d 150 (4th Cir. 2006) ..................................................................7

*United States v. Randall*,
    171 F.3d 195 (4th Cir. 1999) ................................................................15

*United States v. Rodriguez-Moreno*,
    526 U.S. 275 (1999) ..............................................................................14

*United States v. Samad*,
    754 F.2d 1091 (4th Cir. 1984) ................................................................6

*United States v. Shrader*,
    675 F.3d 300 (4th Cir. 2012) ......................................... 16, 17, 18, 19

*United States v. Stewart*,
    256 F.3d 231 (4th Cir.) .......................................................................6, 7

*United States v. Tran Trong Cuong, M.D.*,
    18 F.3d 1132 (4th Cir.1994) ................................................................15

*United States v. Umana*,
    750 F.3d 320 (4th Cir. 2014) ...............................................................14

*United States v. Williams*,
    41 F.3d 192 (4th Cir. 1994) ...................................................................6

*United States v. Wilson*,
    118 F.3d 228 (4th Cir. 1997) ...............................................................12

*United States v. Young*,
    916 F.3d 368 (4th Cir. 2019) ...............................................................10

## Statutes & Other Authorities:

U.S. Const. amend. VI ...............................................................................13

U.S. Const. art. III .....................................................................................13

U.S. Const. art. III, § 2, cl. 3 .....................................................................13

18 U.S.C. § 1959(a) ............................................................................ 14, 15

21 U.S.C. § 841 ...........................................................................................3

21 U.S.C. § 846 ...........................................................................................3

28 U.S.C. § 1291 .................................................................................................1

Fed. R. App. P. 4(b) .............................................................................................1

Fed. R. Crim. P. 18...............................................................................................13

Fed. R. Crim. P. 29.................................................................. 6, 10, 11, 12

Fed. R. Crim. P. 29(a) ..........................................................................................10

## PRELIMINARY STATEMENT

In this opening brief, Appellee will be referred to as the "United States", "the Government", "the Prosecution:, or as "Appellee".  Defendants/Appellants, Carlos Bariola, Natassia Nicole Kimble and Stephen Wayne Purks, will be referred to as "Bariola", "Kimble", "Purks", "Appellant", or "Defendant".  References to the Joint Appendix will be referred to as JA_____.

## STATEMENT OF APPELLATE JURISDICTION

This is an appeal from a final judgment of the United States District Court for the Western District of Virginia, Harrisonburg Division, in a criminal case pursuant to the Federal Rules of Appellate Procedure.  Fed. R. App. P. (4)(b).  Title 28 U.S.C. § 1291 states that the Court of Appeals has jurisdiction from all final decisions of the United States District Courts.  Accordingly, this Court properly has jurisdiction over this matter.  Appellant timely filed a Notice of Appeal from the trial court's final judgment pursuant to Fed. R. App. P. 4(b).

<u>**STATEMENT OF ISSUES**</u>

**ISSUE I.** **THE EVIDENCE WAS INSUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THAT THE APPELLANT, CARLOS BARIOLA, WAS GUILTY OF COUNT I, CONSPIRACY TO DISTRIBUTE AND TO POSSESS WITH INTENT TO DISTRIBUTE METHAMPHETAMINE.**

**ISSUE II.** **THE DISTRICT COURT ERRED WHEN IT DENIED APPELLANT PURKS' MOTION FOR JUDGMENT OF ACQUITTAL ON GROUNDS OF IMPROPER VENUE.**

**ISSUE III.** **THE DISTRICT COURT ERRED WHEN IT REFUSED TO SUPPRESS STATEMENTS MADE BY THE APPELLANT PURKS WHERE THE STATEMENTS WERE NOT VOLUNTARY AND MADE WHILE IN CUSTODY AFTER HE INVOKED HIS RIGHT TO COUNSEL.**

**ISSUE IV.** **THE EVIDENCE WAS INSUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THAT THE APPELLANT, NATASSIA KIMBLE, WAS GUILTY OF COUNT I, CONSPIRACY TO DISTRIBUTE AND TO POSSESS WITH INTENT TO DISTRIBUTE METHAMPHETAMINE.**

<u>**STATEMENT OF THE CASE**</u>

**A. Procedural History**

On October 13, 2021, Bariola was charged in a Second Superseding Indictment with conspiracy to distribute and with possess with intent to distribute methamphetamine. The case was tried by a jury and on February 6, 2023, following a six-day trial, Bariola was found guilty of the charge against him. A sentencing was conducted on July 20, 2023 and Bariola was sentenced to 324 months. He timely noted an appeal to this Court.

On October 13, 2021, Purks was charged in a Second Superseding Indictment with conspiracy to distribute and with possession with intent to distribute methamphetamine.

Additionally, he was charged in 14 counts of the Second Superseding Indictment with knowingly and intentionally distributing controlled substances on a certain date along with another named co-defendant. The case was tried by a jury and on February 6, 2023, following a six-day trial, Purks was found guilty of all the charges against him. By order entered July 26, 2023, Purks was sentenced to 300 months. He timely noted an appeal to this Court.

On July 20, 2023, Natassia Kimble was charged in a Second Superseding Indictment with one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of actual methamphetamine and 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 846, 841. She was tried before a jury in a joint trial with co-defendants Carlos Bariola, Stephen Purks and Jacqueline Cuellar, and was convicted of that charge on February 6, 2023. Kimble's motion for judgment of acquittal was denied by the District Court. (JA1649-1655). On July 20, 2023, she was sentenced to 120 (One hundred twenty) months in prison. (JA2671).

## B. Factual Background

This case involved a drug conspiracy that was operated from a prison facility in the state of Florida. The purpose of the conspiracy was to distribute methamphetamine to various locations in the United States including the Western District of Virginia. The primary method of transporting the drugs was via mail and other delivery services. There was evidence presented that a number of individuals participated and had various roles,

including but not limited to, procuring large quantities of methamphetamine, packing and shipping methamphetamine, receiving and distributing the methamphetamine, and transferring money that was the proceeds of the drugs. The evidence at trial included the testimony of federal agents, postal investigators, chemists, cooperating witnesses who were involved in the illegal activity, and individuals who had entered plea agreements and/or immunity agreements with the United States. None of the Appellants testified. (JA2817-2822)

Each of the Appellants have raised issues that are individual to them and that do not overlap with other Appellants. Each Appellant has a more detailed rendition of the facts pertinent to the issues specific to their claims in the arguments they are making to the Court.

## **SUMMARY OF ARGUMENT**

ISSUE I: The evidence presented by the United States did not prove beyond a reasonable doubt that Bariola was a member of a conspiracy that distributed methamphetamine in the Western District of Virginia. There was no direct evidence against Bariola and the highly speculative and circumstantial nature of the allegations against him was legally and factually insufficient to sustain a guilty verdict. Additionally, the evidence was insufficient to prove that the person that the witnesses heard of and referred to as "C-Lo" was in fact the Appellant and his identity was not established by the evidence.

ISSUE II: The evidence presented by the government established that all of the objective, physical acts constituting the conduct elements of 14 counts of

Distribution were wholly committed by the named defendants, including Appellant Purks, within the geographic boundaries of Florida; therefore, venue did not lie in the Western District of Virginia.

ISSUE III: Officers investigating the instant case contacted the Florida Department of Corrections to see if they could "acquire" a cell phone in the possession of Appellant Purks. Purks was beaten by Florida officers before the phone was recovered, and he was in a wheelchair when he was subsequently interviewed by law enforcement officers while serving a sentence in the custody of a Florida prison. Any statements given should have been suppressed as they were not voluntary and, alternatively, made after Purks invoked his right to counsel.

ISSUE IV: The evidence was insufficient to prove beyond a reasonable doubt that Appellant, Natassia Kimble, was, in fact, the individual known as "Prima," who was a participant in the alleged conspiracy to distribute and possess with the intent to distribute methamphetamine in the Western District of Virginia.

**ARGUMENT**

**ISSUE I**    **THE EVIDENCE WAS INSUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THAT THE APPELLANT, CARLOS BARIOLA, WAS GUILTY OF COUNT I, CONSPIRACY TO DISTRIBUTE AND TO POSSESS WITH INTENT TO DISTRIBUTE METHAMPHETAMINE.**

    **Standard of Review**

    This court reviews the denial of a Rule 29 motion *de novo*. *United States v. Alerre*, 430 F.3d 681, 693 (4th Cir. 2005) *cert. denied*, 547 U.S. 1113, 126 S. Ct. 1925, 164 L. Ed. 2d 687 (2006). When a defendant challenges the sufficiency of a guilty verdict on appeal, he "bears a heavy burden." *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997). However, this is not an insurmountable burden. *United States v. Habegger*, 370 F.3d 441, 444-445 (4th Cir. 2004). This Court views the evidence in a light most favorable to the government, including all reasonable inferences that can be drawn from the evidence. *United States v. Williams*, 41 F.3d 192, 199 (4th Cir. 1994), *cert. denied*, 514 U.S. 1056 (1995). However, a jury is entitled to make only reasonable inferences from the evidence. *United States v. Samad*, 754 F.2d 1091, 1097 (4th Cir. 1984), quoting *United States v. Orrico*, 599 F.2d 113, 117 (6th Cir. 1979). When evaluating the sufficiency of a jury verdict on appeal, this court has held that "the jury verdict must be upheld if there exists substantial evidence, including circumstantial and direct evidence, to support the verdict, viewing the evidence in a light most favorable to the government." *United*

6

*States v. Stewart*, 256 F.3d 231, 429 (4th Cir.), *cert. denied*, 534 U.S. 1049 (2001).

This Court must sustain the appellant's conviction if it determines that the evidence was sufficient for a rational trier of fact to find the essential elements of the crime. *United States v. Perkins*, 470 F.3d 150, 160-61 (4th Cir. 2006).

Statement of Facts

The United States presented evidence of a drug conspiracy that was operated by numerous individuals who were in various locations including Florida, Arizona, and Virginia (JA2817-2818). One of the co-conspirators had numerous cell phones and other forms of digital communication to contact individuals who were not in custody (JA1242-1243). There was no evidence that Appellant Bariola had a phone while in Florida custody and no one identified Mr. Bariola as a person who was involved in the conspiracy.

Argument

The government did not produce any witness that could reliably and credibility identify Bariola as the person who was referred to as C-Low or C-Lo in the various phone calls and emails. While it is certainly true that at the time of the offense the Appellant was an inmate in the same Florida Jail as Appellant Purks, that fact does not prove that Mr. Bariola committed the offense.

The testimony and evidence against Mr. Bariola came from two primary sources, cooperating witnesses, and digital communications. Each will be discussed

but not if this evidence meets the high standard of proof beyond a reasonable doubt.

Jessica Grote testified for the United States. She was released from prison in 2019 and was introduced to Stephen Purks through a friend. Grote and Purks began a phone romance and Mr. Purks had multiple cell phones even though he was incarcerated in Florida. (JA1242-1245) They also communicated through video. Her knowledge of a person with the nickname C-Low all came from Purks. (JA1249-1251) She entered into a plea agreement for a reduced sentence and despite the fact that she was uncooperative and is an admitted liar, the United States called her as a witness. (JA1262-1265) She never identified Mr. Bariola and did not testify that she ever spoke to him. (JA1240-1265)

The United States also called April Mosley as a witness. Ms. Mosley met Stephen Purks through phone contact in 2019 and the phone and video contact evolved into a romance. Purks was incarcerated in Florida and had multiple cell phones. Her knowledge of the term C-Lo came from Purks. (JA594-608) She never met any person who she could identify as C-Lo and never identified Mr. Bariola as C-Lo. She could never establish that the communications she had were with C-Lo (JA649-659) and certainly never established that the person she heard of from Purks who he called C-Low was Appellant Bariola. She never met C-Lo and never identified Mr. Bariola as C-Low. (JA591-712)

The only other witness who was involved in the conspiracy and knew Stephen Purks was Ashlyn Gates. Ms. Gates also had a phone relationship with Purks while he was in jail in Florida. (JA1420-1424) She admitted that she was a liar and dishonest with law enforcement. (JA1433-1435) She was the only witness who testified that Mr. Purks told her that C-Low was Carols Bariola. (JA1447-1449) She never met C-Low nor identified Mr. Bariola in Court. (JA1415-1465)

The defense is well aware of the high standard that must be met to reverse a jury verdict on appeal for lack of sufficient evidence but is also aware that the standard is not insurmountable. In this case the failure of the evidence to establish Appellant Bariola as the person referred to as C-Low or C-Lo in prison phone calls and other communications is obvious. No one identified Mr. Bariola and testified that he was the person referred to by those nicknames. Identity is a key, crucial, and necessary part of any prosecution. The most basic precept of any criminal trial for any offense is that the prosecution must establish that the correct person has been arrested, charged, and put on trial. Even in guilty pleas, an individual has to confirm, under oath, that they are the person named in the indictment or other charging documents. The lack of proof in this case as to who C-Low is and the even greater lack of proof that it is Mr. Bariola is fatal to this conviction. The United States did not produce a single witness or piece of evidence that could establish this basic fact. The fact that Mr. Bariola was in prison in Florida, has a tattoo and even that he knew

Mr. Purks, does not prove that he was involved in a drug conspiracy nor that the person in the courtroom during the trial was the person being discussed during phone calls and other digital communications and referred to as C-Lo or C-Low.

In counsel's experience, it is very unusual that the United States cannot present proof that the individual who is in the courtroom on trial is the person who committed the charged offense, particularly in conspiracy cases. This is one of the rare instances when the first and most basic issue, the identity of the Defendant, has not been proven. For this reason, Mr. Bariola's conviction should be reversed and his sentence vacated.

## ISSUE II. THE DISTRICT COURT ERRED WHEN IT DENIED APPELLANT PURKS' MOTION FOR JUDGMENT OF ACQUITTAL ON GROUNDS OF IMPROPER VENUE.

Standard of Review

When reviewing a district court's denial of a Rule 29(c) motion for judgment of acquittal, this Court reviews the decision *de novo*. *United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019). Rule 29 requires the court to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). While the jury remains the primary factfinder, "the trial judge still resolves elements of the offense in granting a Rule 29 motion in the absence of a jury verdict." *Smith v. Massachusetts*, 543 U.S. 462, 468 (2005).

As such, Rule 29 allows "a substantive determination" by the court "that the prosecution has failed to carry its [factual] burden." *Id*.

Statement of Facts

Appellant Purks was an inmate in the custody of the Department of Corrections for the state of Florida and serving a prison sentence during the entire period of the alleged conspiracy. In 14 counts[1] of the Second Superseding Indictment (JA38), Appellant Purks was charged in each with knowingly and intentionally distributing controlled substances on a certain date along with another named co-defendant.[2] The evidence at trial in the light most favorable to the government, succinctly put, is that in each instance Appellant Purks gave the named co-defendant(s) instructions to package and mail via the United States Postal Service certain controlled substances to addresses within the Western District of Virginia and that in each instance the named co-defendant received and followed the instructions entirely within the geographic borders of the state of Florida.

---

[1] Counts 3-10 and Counts 12-17
[2] In nine of the counts, the named co-defendant is April Lynn Mosley; in three counts, the named co-defendant is Jessica Jo Grote; and in two of the counts, both Mosely and Grote are named.

**The district court erred when it denied Appellant Purks's Rule 29 Motion for Judgment of Acquittal on grounds of improper venue**

Proper venue is a question of fact, and the government bears the burden of proof of establishing venue. *United States v. Engle*, 676 F.3d 405,412 (4th Cir. 2012). Unlike other factual elements, venue "may be proven by mere preponderance of the evidence." *Id*. Because of its factual nature, venue is ordinarily the province of the jury. Like all other factual determinations at trial, however, venue is the proper subject of a Rule 29 motion. See *United States v. Collins*, 372 F.3d 629,633 (4th Cir. 2004) ("[i]f an indictment properly alleges venue, but the proof at trial fails to support the venue allegation, an objection to venue can be raised at the close of evidence.").

Under the applicable burden of proof for venue, a court must deny a Rule 29 motion challenging venue if, when viewing the evidence in the light most favorable to the government, a rational trier of fact could conclude that a preponderance of the evidence supports venue in the district in which the charges are brought. See *Engle*, supra, 676 F.3d at 412; *United States v. Wilson*, 118 F.3d 228, 234 (4th Cir. 1997). Put another way, if the prosecution has not established a prima facie case for venue by its own evidence, the court should have granted the Rule 29 motion. See *United States v. Hinderman*, 625 F.2d 994, 996 (10th Cir. 1980) (per curiam).

Article III of the Constitution mandates that "[t]he Trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. The Sixth Amendment further requires that criminal defendants be tried "by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. Federal Rule of Criminal Procedure 18 implements these constitutional venue rights: "[T]he government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18.

"The federal venue requirement protects criminal defendants from the inconvenience and prejudice of prosecution in a far-flung district bearing no connection to their offenses." *Engle*, supra, 676 F.3d at 412 (citation and quotation omitted); see also *United States v. Cabrales*, 524 U.S. 1, 9 (1998) ("[T]he venue, requirement is principally a protection for the defendant."). These constitutional provisions also "promote thorough factfinding" and are "best served by holding trial where '[t]he witnesses and relevant circumstances surrounding the contested issues' are located." *United States v. Clines*, 958 F.2d 578, 583-84 (4th Cir. 1992) (alteration in original) (quoting *Travis v. United States*, 364 U.S. 631, 640 (1961)).

"While the venue rule – trial in the district where the crime is committed – seems straightforward, the place of the crime can be difficult to determine." *United States v. Bowens*, 224 F.3d 302, 308 (4th Cir. 2000). Absent an express direction from Congress otherwise, "the site of a charged offense must be determined from

the nature of the crime alleged and the location of the act or acts constituting it."
*United States v. Cabrales*, 524 U.S. 1, 5 (1998) (citations and quotations omitted).
"In performing this inquiry, a court must initially identify the conduct constituting
the offense (the nature of the crime) and then discern the location of the commission
of the criminal acts." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999).

In the Fourth Circuit, "the conduct constituting the offense is limited to
essential conduct elements" of the offense.  *Bowens*, supra, 224 F.3d at 312.
Elements that are not conduct elements (like intent elements) are "circumstance
elements," which, "even if essential, are of no moment to a venue determination."
*United States v. Oceanpro Indus., Ltd.*, 674 F.3d 323,328 (4th Cir. 2012) (citations
and quotations omitted).

In *United States v. Umana*, 750 F.3d 320, 335 (4th Cir. 2014), a defendant,
charged in the Western District of North Carolina with a RICO/VICAR charge for a
violent act which took place in the Middle District of North Carolina, argued that
venue was improper.  This Court held that "the purpose element" of 18 U.S.C.
§1959(a) requires an objective, physical act which was committed when Umana
traveled back to the Western District immediately after the murders and boasted to
his fellow gang members about his crimes, demonstrating that he committed the
murders for the purpose of furthering his position in the gang, satisfying "the purpose
element."  Id. at 335-36.  In light of the defendant's "objective, physical act" in the

Western District of North Carolina related to the murders in Greensboro, the Umana court held venue for the §1959(a) offenses and the corresponding § 924(c) offenses was proper in that district.

In the 14 counts at issue here, the elements of the offenses are as follows: (1) distribution of the narcotic controlled substance, (2) knowledge of the distribution, and (3) intent to distribute the narcotic controlled substance. *United States v. Randall*, 171 F.3d 195, 209 (4th Cir. 1999), citing *United States v. Tran Trong Cuong, M.D.*, 18 F.3d 1132, 1137 (4th Cir.1994). "The term 'distribute' means 'to deliver ... a controlled substance ...,' and the term 'deliver' means 'the actual, constructive, or attempted transfer of a controlled substance ... whether or not there exists an agency relationship.' Id.

All of the objective, physical acts (i.e., conduct) taken by the named defendants, including Appellant Purks, were wholly committed by the named defendants in Florida, outside the Western District of Virginia. In the case of these 14 charges, the offense was completed when a named defendant, April Mosely, for example, delivered and relinquished possession of the controlled substance. That constituted a completed offense. When the evidence established that April Mosely packaged methamphetamine, carried it to a post office in Florida, completed the label, paid the postage, and handed the package to the cashier, the evidence has established that April Mosely distributed methamphetamine.

The point is quite explicit in *United States v. Medina-Ramos*, 834 F.2d 874 (10th Cir. 1987), where a defendant boarded a train in California bound for Illinois. He (but not his luggage) was removed from the train while traveling through California, and in New Mexico his luggage was opened and found to contain a kilo of cocaine. The Tenth Circuit found that venue for his PWID charge was improper in New Mexico. "The location at which the acts constituting possession occur is therefore the location at which the crime is committed for purposes of venue." Id., at 876. Just the same, the location at which all of the the acts constituting distribution occurred in the instant case (i.e. Florida) is the location at which the crime is committed for purposes of venue.

**ISSUE III. THE DISTRICT COURT ERRED WHEN IT REFUSED TO SUPPRESS STATEMENTS MADE BY APPELLANT PURKS WHERE THE STATEMENTS WERE NOT VOLUNTARY AND MADE WHILE IN CUSTODY.**

Standard of Review

When reviewing a district court's denial of a motion to suppress, this Court reviews the district court's legal determinations *de novo* and its factual conclusions for clear error. *United States v. Arce*, 49 F.4th 382, 390 (4th Cir. 2022) citing *United States v. Shrader*, 675 F.3d 300, 306 (4th Cir. 2012).

Statement of Facts

Appellant Purks was an inmate in the custody of the Department of Corrections for the state of Florida and serving a prison sentence during the period

of the alleged conspiracy. Agents of the United States contacted officials of the Florida Department of Corrections (DOC) in Arcadia, Florida, and engaged in conversations that led to the assault of the Defendant by state correctional officers on or about that date.

On or about May 11, 2021, S.A. Hickey of the DEA called a Florida DOC investigator at Desoto Annex, a DOC facility, to inform the investigator that S.A. Hickey believed Purks had a contraband cellphone in his possession at the prison that he was concealing in his "rectal areas." (JA90-91). At the time, the federal government believed they had been communicating with Purks through a confidential informant to purchase methamphetamine. (JA91). SA Hickey asked the investigator to "see if he could acquire the cell phone" because the federal agents wanted to obtain information from the phone that they hoped would provide corroboration that they had been communicating with Purks. (Id.)

At some point after S.A. Hickey's phone call with the investigator, Purks was removed from his cell and beaten by Florida DOC officers who stated that "they knew [Purks] had a phone" and "to give it to them." (JA120). They slammed Purks against a gate, threw him to the ground then stomped on his back until he relented and surrendered a phone to them. (JA119-120).

The beating he received left him in pain and in a wheelchair when S.A. Hickey and two other Virginia-based law enforcement officers arrived two days later on

May 13, 2021. (JA93, JA112-113). DOC officers removed Purks from his cell, shackled him hand and foot, and pushed him in a wheelchair to an administration building still within the confines of the prison. (JA113, JA121). S.A. Hickey testified that the interview was conducted in an office setting in the prison where the door was closed and only the Appellant Purks and the three law enforcement officers were present. (JA114). SA Hickey observed that Purks was "slumped over" in the wheelchair, and that he appeared to be in pain. (JA93, JA113).

S.A. Hickey initiated the conversation by informing Purks that he had already been indicted in the Western District of Virginia on methamphetamine-related charges. (JA94). Purks testified that the first thing he said when he entered the interview was, "[O]h, so you're the one that put them up to this," referring to his earlier beating by the DOC officers to retrieve the cell phone. (JA127). According to Purks, SA Hickey "didn't deny it," instead saying "[W]ell, you shouldn't have a phone in prison." (Id.)

According to S.A. Hickey, the agents had traveled to Florida to inform Purks of the federal case and "to recover the cell phone." (JA96-97, JA111). After some discussion, S.A. Hickey then told Purks, "I do want to talk to you because I know you have information that can help us." (JA98). S.A. Hickey then provided him with standard *Miranda* warnings—including the right to have counsel present— from a card he kept in his wallet. (JA98-99).

Purks testified that, after receiving *Miranda* warnings, the two began a back-and-forth conversation in which SA Hickey asked him questions Purks considered incriminating. For example, SA Hickey asked Purks, "so who's your best customer?" (JA123). Purks responded that he "can't answer that. You're trying to make me incriminate myself, you know." (Id.) Purks testified that about a minute and a half after he received *Miranda* warnings, he asked for an attorney. (Id.)

On the other hand, S.A. Hickey testified that Purks never requested an attorney or asked to stop the interview. (JA115). S.A. Hickey testified that, while he had a recording device in his possession during the entire interview, he made no effort to record the conversation or the Appellant's waiver of *Miranda* or absence of an invocation of his right to counsel. (Id.)

Argument

**Any statements made were not voluntary**

The district court erred when it failed to suppress statements made to agents of the federal government on the ground, first of all, that the statements were not voluntary and were the product of actual physical coercion or the perceived threat of additional physical injury.

A statement is involuntary under the Fifth Amendment's Due Process Clause "when it is 'extracted by ... threats or violence.'" *United States v. Ayesh*, 702 F.3d 162, 168 (4th Cir. 2012) (quoting *Hutto v. Ross*, 429 U.S. 28, 30 (1976)). "The

pivotal inquiry is whether the defendant's will has been 'overborne' or his or her capacity for self-determination critically impaired." *Id*. (quoting *United States v. Pelton*, 835 F.2d 1067, 1071–72 (4th Cir. 1987) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). "Coercive police activity is a necessary predicate to a finding that a confession is not 'voluntary' within the meaning of the Due Process Clause." *United States v. Cristobal*, 293 F.3d 134, 140 (4th Cir. 2002) (citing *Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997) (en banc).

In this case, while the actual physical beating was not contemporaneous with the interrogation, the beating and resulting ongoing injuries served to overbear the Appellant's will and cause him to submit to questioning even after attempting to invoke his right to counsel.

## The Defendant invoked his right to counsel

The district court also erred when it refused to suppress statements made to agents of the federal government in violation of *Miranda*.

The Fifth Amendment of the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court adopted a prophylactic rule that law enforcement must warn a criminal suspect of certain rights prior to a custodial interrogation as a means of protecting this constitutional right.

Evidence obtained from a custodial interrogation without a *Miranda* warning is inadmissible in the prosecution's case-in-chief. See *United States v. Parker*, 262 F.3d 415, 419 (4th Cir. 2001). Just the same, evidence obtained from a custodial interrogation after a *Mirandized* suspect requests an attorney is also inadmissible. *Edwards v. Arizona*, 451 U.S. 4771 (1983); *Davis v. United States*, 512 U.S. 452 (1994).

Whether an individual is in custody is a fact-specific, objective inquiry into the totality of the circumstances. *United States v. Hargrove* , 625 F.3d 170, 178 (4th Cir. 2010). That inquiry asks whether a reasonable person would perceive his "freedom of action is curtailed to a 'degree associated with formal arrest.'" *Berkemer v. McCarty*, 468 U.S. 420, 440, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (quoting *California v. Beheler*, 463 U.S. 1121 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (per curiam)).

Here, where the Appellant Purks was confined in prison, shackled and handcuffed in a wheelchair, in a closed room in the prison with three law enforcement officers, and having been advised that he had been indicted by a grand jury in the Western District of Virginia, there can be no doubt that a reasonable person would perceive his freedom of action is curtailed to a degree associated with formal arrest.

Where the government wishes to introduce a person's statements obtained during a custodial interrogation, the government has the burden to prove that the suspect waived his constitutional rights by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). While there is currently no legal requirement that a written *Miranda* waiver must be executed, that officers must take contemporaneous notes memorializing such a waiver, and that the interrogation must be recorded when audio or video recording equipment is available, the total failure by government agents to make any simple attempt to preserve the record of such a waiver makes it difficult for the government to carry its burden in the face of contradictory evidence of a wavier or the invocation of counsel. See *United States v. Lewis*, 355 F.Supp.2d (E.D.Mich. 2005).

**ISSUE IV.  THE EVIDENCE WAS INSUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT NATASSIA KIMBLE WAS GUILTY OF COUNT I, CONSPIRACY TO DISTRIBUTE AND TO POSSESS WITH INTENT TO DISTRIBUTE METHAMPHETAMINE.**

Standard of Review

Appellant Kimble adopts the Standard of Review set forth by Appellant Bariola as to Issue I, which is also a sufficiency of the evidence claim.

Statement of Facts

April Mosely testified that she sent her address to Prima so she could send packages, and that she communicated with her by phone, (JA673), and that she sent

Prima her own and Catherine Rec's addresses so she could send methamphetamine. (JA673, JA677). She identified a receipt sent by Prima. (JA676). She testified that "City" wanted Prima to send him a card with substance on it. (JA675). She identified a receipt and images with tracking numbers sent by Prima. (JA676).

The Postal Service tracked a package shipped from the Jacksonville, Hialeah and Miami Post Offices and intercepted them at Catherine Rec's home. (JA760, JA762, JA764-767, JA819-823). Postal Inspector Chavez identified video screenshots of a person sending packages that were later intercepted at Catherine Rec's home, which contained methamphetamine. (JA716, JA737, JA760, JA819-823). However, Chavez failed to find or interview the postal worker who accepted the Hialeah package, attempt to obtain fingerprints or DNA from the package, or attempt handwriting analysis. (JA931-938)

None of the cooperating witnesses identified Kimble visually or by her last name. The only person to identify Kimble was DEA Special Agent Matthew Green, who arrested her at her residence. (JA1106-1108). The search of her room resulted in the seizure of Postal Service envelopes addressed to her, shipping labels, tape, receipts, and a piece of paper with names and addresses. (JA1114-1117). During the search, a drug dog did not alert for drugs and no drugs were found. (JA1157). Several packages addressed to Natassia Kimble were found in her room. The shipping label of one package included the name of Ms. Cuellar, but, while it was addressed to the

building in which Ms. Kimble's room was located, it was not addressed to her. (JA1114-1117).

Agent Hickey identified notebooks seized from Cuellar's residence. (JA1308). He stated that one appeared to contain "owe sheets," and another, financial transactions. (JA1309-1310). The prosecutor asked him to "scroll through" the document and "point out any items that draw your attention." He noted several references to Prima, among other names, and one reference to "Natassia Kimble," (JA1311), the only surname he listed when reciting the names that appeared. (JA1310-1311). In fact, "Kimble" did not appear in the notebook; he had gratuitously added it. Kimble's counsel objected and the prosecutor remained mute. The objection was sustained. (JA1310). That was the only time Kimble's surname was linked to evidence of actual drug trafficking. There were references to Prima, but not to Natassia, in the "owe sheets." (JA1311-1316).

In his statement to law enforcement, which was read to the jury, defendant Purks identified individuals with whom he worked in this drug distribution business but did not mention any names associated with Kimble. (JA1324). Purks' phone contained references to "Prima," but not to "Natassia." (JA1332-1333). There were references to "Natassia," in the texts on Cuellar's phone. (JA1369-1370).

Ashlyn Gates testified that Prima sent her packages with methamphetamine. (JA1440-1445).

<u>Argument</u>

The government's case was devoid of evidence tying the defendant, "Natassia Kimble," by name or visual identification, to the conspiracy. None of the government's cooperating witnesses identified her. The only person to identify her was the agent who conducted the search of her room.

The Postal Service envelopes, shipping labels and receipts found in Kimble's room did not establish a connection to the other participants in the alleged conspiracy or drug trafficking generally. The only item in her room that could have provided a connection to the other conspirators was an envelope that had Ms. Cuellar's name as the sender. However, not only was that insufficient to establish that Cuellar had sent the package, it was not addressed to Ms. Kimble.

The phone records of other alleged conspirators also did not implicate Ms. Kimble. While there were references to "Natassia," there weren't any references to "Kimble." That is insufficient to establish a connection to Ms. Kimble. And the absence of the name "Kimble" from the "owe sheets" likewise supports the conclusion that the government did not sustain its burden to prove Natassia Kimble guilt beyond a reasonable doubt. Likewise, the evidence did not establish that "Prima," the mystery woman who clearly was part of the conspiracy, was Natassia Kimble. The inferences essential to the government's case - that references to "Natassia" refer to Natassia Kimble and Prima was Natassia Kimble - are not "reasonable inference" to which the government is entitled.

Moreover, Purks' omission of Kimble, by any name, from his list of drug associates undermines the suggestion that she was a member of the conspiracy alleged in Count One.

## CONCLUSION

For all of the reasons stated above, the Appellants, Carlos Bariola, Natassia Nicole Kimble and Stephen Wayne Purks, requests that the convictions and sentences be vacated and the case be remanded to the United States District Court for further proceedings and for such other relief as this Court deems appropriate.

## STATEMENT REGARDING ORAL ARGUMENT

Appellants, Carlos Bariola and Natassia Nicole Kimble, by counsel, assert that the arguments contained in this Brief are complete and meritorious. Appellants Carlos Bariola and Natassia Nicole Kimble do not request oral argument. Appellant Stephen Wayne Purks requests oral argument.

/s/ Lawrence H. Woodward, Jr.
Lawrence H. Woodward, Jr.
VSB No. 21756
Ruloff, Swain, Haddad, Morecock
  Talbert & Woodward, P.C.
317 30TH Street
Virginia Beach, VA 23451
(757)671-6047 - telephone

*Counsel of Appellant*
*Carlos Bariola*

/s/ Aaron L. Cook
Aaron L. Cook
VSB No. 37192
Cook Attorneys, PC
71 Court Square, Suite B
Harrisonburg, VA 22801
(540) 564-9699 - telephone

*Counsel for Appellant*
*Stephen Wayne Purks*

/s/ Gerald Thomas Zerkin
Gerald Thomas Zerkin
VSB No.: 16270
Gerald Thomas Zerkin
Attorney-at-Law
P.O. Box 5655
Richmond, VA 23220
(804) 921-4885

*Counsel for Appellant*
*Natassia Nicole Kimble*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. __23-4483(L)__    **Caption:** US v. BARIOLA ET AL.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

> **Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

> **Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

> **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains ____5,866____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word 2016 _____ [*identify word processing program*] in
14 point Times New Roman _____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Lawrence H. Woodward, Jr. _____

Party Name __appellant_____

Dated: __6/20/2024_____